OPINION
Appellant State of Ohio appeals the decision of the Court of Common Pleas, Delaware County, granting Appellee Lonnail McGhee's motion to dismiss his indictment. The relevant facts leading to this appeal are as follows.
On November 20, 1998, appellee was indicted by the Delaware County Grand Jury on one count of robbery, and one count of receiving stolen property, stemming from an incident on August 25, 1998, at a service station at Lewis Center in Delaware County. On November 20, 1998 the Delaware County Prosecuting Attorney filed a request for the issuance of a warrant upon indictment for appellee's arrest. The prosecutor's request directed the issuance of the warrant upon appellee at his apparent last known address in Toledo, Ohio. The warrant was entered into the National Crime Institute Center (NCIC) database by the Delaware County Sheriff's Office on November 23, 1998. On February 9, 1999, appellee began a term of incarceration on an unrelated conviction from Lucas County, the term of which continued until October 10, 2000. Said incarceration commenced at the Correctional Reception Center ("CRC") at Orient, Ohio, and continued at the Warren Correctional Institution. It is undisputed that no warden of any correctional institution or any agent of any warden notified appellee of the November 1998 Delaware County indictment until October 10, 2000. On that date, following a check of the NCIC database, the warden of the Warren Correctional Institute accomplished the notification. It is further undisputed that appellee thereupon did not send any notice to the proper Delaware County authorities requesting to be tried on the indictment, pursuant to RC 2941.401.
Upon his release, appellee was transported to Delaware County and appeared for arraignment on October 17, 2000. Appellee at that time listed his address as Tiffin, Ohio. On November 14, 2000, appellee moved for an order of dismissal on the grounds that he had been denied his right to a speedy trial as guaranteed by the Ohio and United States Constitutions. The state filed a written response on December 1, 2000. On the same date the trial court conducted a hearing on appellee's motion to dismiss. On December 13, 2000, the trial court issued a judgment entry granting appellee's motion and dismissing the indictment.
The state filed a notice of appeal on December 20, 2000, and herein raises the following sole Assignment of Error:
 I. THE TRIAL COURT ERRED IN ITS ORDER FILED DECEMBER 13, 2000 GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO R.C. SEC. 2941.401.
 I.
The right to a speedy trial is encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. In the case sub judice, the state's argument centers on the codification of speedy trial rights for individuals already in the state penal system, as per R.C. 2941.401:
 When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter * * *.
 The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having custody of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.
 The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.
* * *
The trial court relied primarily on two cases in reaching its decision in this matter: State v. Brown (1998), 131 Ohio App.3d 387, 392, andState v. Martin (1984), 16 Ohio App.3d 172, 173, both of which hold that the state must exercise "reasonable diligence" in notifying and informing a prisoner of pending charges under R.C. 2941.401. We have previously espoused this position as well. See City of Newark v. Barcus (Sept. 9, 1994), Licking App. No. 94 CA 00015, unreported. As the Brown Court indicated, "[a]lthough section 2941.401 does not explicitly require the state to give notice of an indictment to an accused who is incarcerated on a different charge, the statute would have no meaning if the state could circumvent its requirements by not sending notice of an indictment to the warden of the institution where the accused is imprisoned." Brown
at 392, quoting State v. Miller (1996), 113 Ohio App.3d 606, 609. In that light, the trial court sub judice held as follows:
 In the case sub judice, the prosecutor's office merely placed the warrant in the national crime database without much more. A mere phone call to DRC would have told them where the Defendant was. The State did not meet their duty of "reasonable diligence" by failing to pursue the Defendant's whereabouts for about twenty three months.
Judgment Entry, December 13, 2000, at 3-4.
As an appellate court, we must give great deference to the factual findings of a trial court. However, we must independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case. State v. Williams (1994), 94 Ohio App.3d 538,543, citing State v. Klein (1981), 73 Ohio App.3d 486, 488. The bulk of the relevant facts were stipulated at trial, and the remainder thereof do not appear to be disputed. At the hearing on December 1, 2000, the assistant prosecutor made statements to the court that the warrant for appellee was placed into the NCIC database on November 23, 1998, and that on October 21, 1999 and November 9, 1999, David Hejmanowski, on behalf of the county, contacted law-enforcement authorities in Toledo to ascertain if they had any valid addresses for appellee. No other efforts were made to discover appellee's whereabouts; in particular, no further attempts were made thereafter to check for appellee's possible incarceration. The assistant prosecutor further stated that CRC officials did check computer records, via NCIC, upon appellee's entrance into the facility on February 9, 1999, but no warrants appeared.
The state again directs us to the case of Martin, supra, wherein it was concluded that the prosecutor in that case had indeed used reasonable diligence: "The detective in this case * * * acted diligently to locate defendant including contacting his parole officer, serving the capias at his last known residence, his aunt's house and at his last known place of employment. The detective also consulted the Cleveland Police Department, and left a copy of the capias at the parole office so that he could be notified if defendant appeared there." Id. at 174. The state essentially urges that a similar result is warranted under the facts of the case sub judice, and suggests that the trial court's decision "places an almost impossible burden on plaintiff to work warrants and locate defendants * * *." Appellant's Brief at 8.
We are unpersuaded by the state's contention, under the facts of this case. The dilemma presented by the state's reliance on the facts ofMartin is that the indictment in that case arose in 1981, nearly a bygone era in the "age of information" which our society enjoys. A twenty-first century definition of "reasonable diligence" in locating prisoners must naturally reflect the advancing availability of telecommunications and information technology for this task. Therefore, we are unable to find error in the trial court's dismissal of the indictment pursuant to R.C.2941.401.
The trial court further addressed appellee's constitutional claims by citing Doggett v. United States (1992), 505 U.S. 647, 652, fn. 1, andState v. Selvage (1997), 80 Ohio St.3d 465, both of which recognize that postaccusation delay is "presumptively prejudicial," at least as it approaches one year. For the reasons stated previously, we agree with the trial court's conclusion that the facts herein do not demonstrate requisite efforts by the state in locating appellee sufficient to overcome the presumption that the nearly two-year delay was prejudicial. Cf. Barker v. Wingo (1972), 407 U.S. 514.
Upon review, we find no error in the trial court's dismissal of the indictment. Appellant State of Ohio's sole Assignment of Error is overruled.
For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
Costs taxed to Appellant State of Ohio.
 ____________________ Wise, J.
Edwards, P. J., and Boggins, J., concur.